WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Angel James Moreno, | ) | CIV 15-1698-PHX-DLR (MHB) |
| Petitioner, | ) ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Charles L. Ryan, et al., | ) ) | |
| Respondents. | ) ) ) | |

TO THE HONORABLE DOUGLAS L. RAYES, UNITED STATES DISTRICT COURT:

Petitioner Angel James Moreno, who is confined in the Arizona State Prison Complex, filed a *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 9). Respondents filed an Answer (Doc. 16), and Petitioner has filed a reply (Doc. 17).

## BACKGROUND[1]

The Arizona Court of Appeals summarized the evidence as follows:

> Officer Urbatsch was on patrol when he spotted a turquoise late-model Chevrolet Camaro fitting the description of a vehicle recently reported stolen. A person later identified as Jose Garcia emerged from a nearby backyard and approached the officer. Officer Urbatsch questioned Garcia about the Camaro. [Petitioner] then emerged from the same backyard and joined the conversation. [Petitioner] explained that he was in the process of buying the Camaro and had the owner's permission to test drive it to his home, where it was parked.

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 16 – Respondents' Answer.

> Officer Urbatsch received confirmation the Camaro had been stolen. Upon hearing this news, [Petitioner] and Garcia became belligerent, stopped cooperating, and began screaming obscenities. They fled to the fenced backyard. Officer Urbatsch followed, but Garcia ran at him with something in his hand, causing the officer to retreat and draw his firearm.
>
> Officer Magness arrived to assist. Officer Urbatsch moved to the front of the house and saw [Petitioner] running "in a dead sprint." He gave chase. [Petitioner] ignored commands to stop. Officer Urbatsch ultimately caught [Petitioner], who resisted attempts to handcuff him. After [Petitioner] was handcuffed and placed in a patrol car, officers returned to [Petitioner's] house. Garcia, still in the backyard, was "spraying something" at officers and screaming profanities. It took five officers to subdue him. While in the patrol vehicle, Garcia kicked the doors and screamed obscenities. [Petitioner] then began screaming and "kicking out the doors" of the patrol car he was in. Officers attempted to restrain him. [Petitioner] claimed he was in the Mexican Mafia and stated he and Garcia would "come to your house and kill you and your kids." He repeated the threat "a few times." [Petitioner] later loosened his restraint and began kicking again. He "broke the rubber molding around the top of the car ... and also bent the car door out to the point where it couldn't be closed anymore."

(Exh. FF at 2-3.)

The Arizona Court of Appeals also described the officers' subsequent investigation:

> The Camaro's owners did not give [Petitioner] or Garcia permission to drive the car. The Camaro had a cracked steering column and could only be operated with a tool like a screwdriver. [Petitioner] was in possession of the Camaro within approximately two hours of it being reported stolen. Once officers verified that the Camaro was stolen, [Petitioner] stopped cooperating and attempted to flee.

(Id. at 4.)

Petitioner was charged with resisting arrest, theft of a means of transportation, criminal damage, and threatening/intimidating. (Exhs. A-C, O.) After a 4-day trial (Exhs. H-N), a jury found him guilty as charged on all counts (Exhs. P-S). The trial court subsequently sentenced Petitioner to 2.25 years of imprisonment for resisting arrest, a consecutive 7 years of imprisonment for theft of a means of transportation, and time-served on the remaining counts. (Exh. W.)

Petitioner appealed his convictions and sentences to the Arizona Court of Appeals. (Exh X.) After reviewing the record, Petitioner's appointed counsel was unable to identify any non-frivolous issues, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967),

1  and filed a motion for leave to allow Petitioner to file a supplemental brief. (Exh. Y.) On
2  December 17, 2013, the Arizona Court of Appeals noted its receipt of counsel's <u>Anders</u> brief
3  and gave Petitioner until January 27, 2014, in which to file a pro per supplemental brief. (Exh
4  Z.)

5  Petitioner failed to file a supplemental brief. Instead, on January 23, 2014, he filed a
6  letter in the trial court stating the following:

> I am writ[]ing [t]his letter with the hope that by the end you'll take [t]his case as seriously as it should be. I've been incarcerated for 3-years now, for a crime I had absolutely nothing to do with. It's not [j]ust my words that I'm asking you to consider but also the evidence that will clearly show that I had nothing to do with one of the four crimes that I was convicted of. So I am writ[]ing in regards that I may get my appeal granted based on [insufficient evidence]. I will not make myself out to be an Angel but I also am not the man I was made out to be at my trial. I honestly was falsely accused of Theft of means. I however do apologize for my behavior with Law Enforcement on that day. I have no [e]xcuse. As it is said "two wrongs do not make a right!!["] [T]hat is where I need[] your help to correct a wrong. I ask for your patience in finding the right decision in helping me out in this matter. I also would like to add that I strongly feel that I had [in]sufficient of counsel for the fact that he did not present [e]vidence that was needed in my behalf.

(Exh. AA at 1.)

The trial court construed Petitioner's letter as a Notice of Post-Conviction Relief (PCR) raising two claims: (1) Petitioner was actually innocent under Ariz. R. Crim. P. 32.1(h); and (2) Petitioner received ineffective assistance of counsel. (Exh. BB at 1.) The trial court found that the petition was untimely because it was not filed within 90 days of the entry of judgment and sentencing. (<u>Id.</u>) The trial court then found that Petitioner failed to establish that any exception to Arizona's timeliness rules applied and dismissed the petition with prejudice on April 1, 2014. (<u>Id.</u> at 1-2.)

On May 7, 2014, Petitioner filed a "Notice of Delayed Supplemental Brief" in the Arizona Court of Appeals (Exh. CC). On the same day, Petitioner filed two additional documents in the same court: (1) a "Request for Permission to File Delayed Supplemental Brief to Court of Appeals, Division One" (Exh. DD); and (2) a "Motion to Withdraw Pleading" (Exh. EE). These documents alleged that his earlier January 23, 2014 letter to the

- 3 -

1   trial court – which the trial court construed as a PCR notice and dismissed – was in fact
2   meant to be his pro per supplemental brief in the Arizona Court of Appeals. (Exhs. DD, EE.)
3   Petitioner requested to withdraw his letter so he could file "a correct notice of
4   Post-Conviction Relief once his direct appeal ha[d] been decided." (Exh. EE).

5         Ultimately, it appears that the Arizona Court of Appeals considered Petitioner's pro
6   per supplemental pleadings. (Exh. FF at 2.) The Arizona Court of Appeals, construing his
7   arguments liberally, understood Petitioner to be making two claims: (1) he was prevented
8   from testifying at trial; and (2) the evidence was insufficient to support his convictions. (Exh.
9   FF at 3-4.) Regarding the first claim, the court found that Petitioner's assertions were false:
10  "he was offered a full opportunity to present witnesses and evidence at trial, but declined to
11  do so." (Id. at 3.) Regarding the second claim, the court found that the evidence was
12  sufficient to support all of Petitioner's convictions. (Id. at 3-5.) Accordingly, the court
13  allowed Petitioner's counsel to withdraw and affirmed his convictions and sentences. (Id. at
14  5.) Petitioner subsequently filed a motion for reconsideration (Exh. GG), which the Arizona
15  Court of Appeals denied on August 18, 2014 (Exh. HH).

16        Petitioner did not file a timely petition for review in the Arizona Supreme Court. The
17  Arizona Court of Appeals issued its mandate on September 25, 2014. (Exh. II.) On
18  September 26, 2014, Petitioner filed a document in the Arizona Supreme Court entitled
19  "Courts Authority and Jurisdiction: Appellants R-ule 32 'Request for Review,'" (Exh. KK)
20  and an attached "Agenda (Index)" (Exh. LL). The Arizona Supreme Court denied
21  Petitioner's pleading on March 31, 2015. (Exh. MM.)

22        Petitioner filed his amended habeas petition on March 7, 2016 (Doc. 9). Petitioner
23  raises four grounds for relief. In Ground One, Petitioner alleges he had no knowledge that
24  the stolen vehicle was on his sister's property. He appears to contend that the police assumed
25  he was involved in the theft of the vehicle, but Petitioner's brother told the police that he had
26  stolen the vehicle. Petitioner asserts that no fingerprints were taken and that the police called

27
28

- 4 -

the owner of the vehicle to retrieve it. Petitioner claims he was provoked when the police began "beating" Petitioner's brother.

In Ground Two, Petitioner contends his due process rights and his Fourth Amendment rights were violated because his brother admitted to the police officer that he had committed the theft and submitted an affidavit to that effect, but "both lawyers did absolut[e]ly nothing about it" and Petitioner was not allowed a preliminary hearing.

In Ground Three, Petitioner asserts that the police assumed that Petitioner was involved in the vehicle theft, did not check for Petitioner's fingerprints, and allowed the evidence to be taken away because they returned the stolen vehicle to its owner.

In Ground Four, Petitioner claims he was denied due process because the police had no evidence to arrest him and he did not receive a preliminary hearing.

**DISCUSSION**

In their Answer, Respondents contend that Grounds One, Two, and Three are procedurally defaulted, and Ground Four fails on the merits. As such, Respondents request that the Court deny and dismiss Petitioner's habeas petition with prejudice.

**A.     Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal

1  theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78
2  (1971) ("[W]e have required a state prisoner to present the state courts with the same claim
3  he urges upon the federal courts."). A claim is only "fairly presented" to the state courts
4  when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim
5  under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000)
6  (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner
7  fails to alert the state court to the fact that he is raising a federal constitutional claim, his
8  federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

9        A "general appeal to a constitutional guarantee," such as due process, is insufficient
10 to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518
11 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005)
12 ("Exhaustion demands more than drive-by citation, detached from any articulation of an
13 underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because
14 its factual basis was presented to the state courts on state law grounds – a "mere similarity
15 between a claim of state and federal error is insufficient to establish exhaustion." Shumway,
16 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

17       Even when a claim's federal basis is "self-evident," or the claim would have been
18 decided on the same considerations under state or federal law, a petitioner must still present
19 the federal claim to the state courts explicitly, "either by citing federal law or the decisions
20 of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted),
21 amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004)
22 (claim not fairly presented when state court "must read beyond a petition or a brief ... that
23 does not alert it to the presence of a federal claim" to discover implicit federal claim).

24       Additionally, under the independent state grounds principle, a federal habeas court
25 generally may not review a claim if the state court's denial of relief rests upon an
26 independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32
27 (1991). The United States Supreme Court has explained:

28

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See Id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[2] and "adequate"[3] – review of the merits of the claim by a federal habeas court is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent

---

[2] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[3] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

- 7 -

state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S. at 264 n.10).

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris, 489 U.S. at 263 n.9).

In Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See, e.g., Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S.

1  856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (rejecting argument that Arizona
2  courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal
3  Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996)
4  (waiver and preclusion rules strictly applied in post-conviction proceedings).

5         The federal court will not consider the merits of a procedurally defaulted claim unless
6  a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for
7  his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995);
8  Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and
9  prejudice" test, a petitioner must point to some external cause that prevented him from
10 following the procedural rules of the state court and fairly presenting his claim. "A showing
11 of cause must ordinarily turn on whether the prisoner can show that some objective factor
12 external to the defense impeded [the prisoner's] efforts to comply with the State's procedural
13 rule. Thus, cause is an external impediment such as government interference or reasonable
14 unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir.
15 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules
16 or other forms of general inadvertence or lack of legal training and a petitioner's mental
17 condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly
18 present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear
19 that a fundamental miscarriage of justice exists when a Constitutional violation has resulted
20 in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

21        The Court finds that Petitioner has procedurally defaulted Grounds One, Two, and
22 Three of his amended habeas petition. Petitioner never presented these claims to the Arizona
23 Court of Appeals in his supplemental pleadings on direct review. And, he did not present
24 these claims in a PCR petition to the state court, and he failed to file a petition for review of
25 the denial of his PCR petition to the Arizona Court of Appeals. Consequently, Petitioner's
26 failure to fairly present Grounds One, Two, and Three has resulted in procedural default
27 because Petitioner is now barred from returning to state courts. See Ariz.R.Crim.P. 32.2(a),

1  32.4(a), 32.9(c). Although a procedural default may be overcome upon a showing of cause
2  and prejudice or a fundamental miscarriage of justice, see Coleman, 501 U.S. at 750-51,
3  Petitioner has not established that any exception to procedural default applies.

4        Petitioner asserts that he "was not totally familiar with documents at the time." (Doc.
5  9 at 6.) Petitioner, however, has failed to explain what "documents" he is referring to or why
6  his unfamiliarity with these "documents" establishes cause and prejudice to excuse his
7  procedural default. And, again, general inadvertence or lack of legal training does not
8  constitute legally cognizable cause for a petitioner's failure to fairly present his claim.

9        Additionally, Petitioner seems to generally claim that he is innocent. Petitioner states
10 that "I did state this to my attorney and my brother did to his attorney. [T]he affidavit should
11 be on file and that would clear me of any wrong[]doing in this case." (Doc. 9 at 7.) A
12 gateway claim of actual innocence requires "new reliable evidence – whether it be
13 exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical
14 evidence – that was not presented at trial." Schlup, 513 U.S. at 324. "[A] petitioner does not
15 meet the threshold requirement unless he persuades the district court that, in light of the new
16 evidence, no juror, acting reasonably, would have voted to find him guilty beyond a
17 reasonable doubt." Id. at 329. "[T]he *Schlup* standard is demanding and permits review only
18 in the 'extraordinary' case." House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513
19 U.S. at 327). These claims open the gateway for review when a petitioner "presents evidence
20 of innocence so strong that a court cannot have confidence in the outcome of a trial unless
21 the court is also satisfied that the trial was free of nonharmless constitutional error." Schlup,
22 513 U.S. at 316. Further, "'actual innocence' means factual innocence, not mere legal
23 insufficiency" of the evidence. Bousley v. United States, 523 U.S. 614, 623-24 (1998).

24       Here, Petitioner seems to challenge the sufficiency of the evidence. However, alleging
25 that the evidence is unreliable or insufficient to support a conviction does not prove actual
26 innocence. See Bousley, 523 U.S. at 623-24. Petitioner's bare claims of innocence without
27
28

- 10 -

1  any new reliable evidence fall short of meeting the "demanding" actual innocence standard.
2  See House, 547 U.S. at 538.

**B.    Merits**

Pursuant to the AEDPA[4], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

In Ground Four, Petitioner claims that he was denied due process because the police had no evidence to arrest him and he did not receive a preliminary hearing. The Court notes that in support of his claim, Petitioner relies solely on his own self-serving statements.

---

[4] Antiterrorism and Effective Death Penalty Act of 1996.

- 11 -

Ground Four corresponds to Petitioner's sufficiency of the evidence claim presented on appeal, which the Arizona Court of Appeals rejected as follows:

> ¶8 Construing Moreno's remaining arguments liberally, he appears to challenge the sufficiency of the evidence supporting his convictions. Our review of the record reveals substantial evidence for each conviction. *See Tison*, 129 Ariz. at 552, 633 P.2d at 361(in reviewing for sufficiency of evidence, "[t]he test to be applied is whether there is substantial evidence to support a guilty verdict"). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). We will reverse a conviction "only if there is a complete absence of probative facts to support [the jury's] conclusion." *State v. Carlisle*, 198 Ariz. 203, 206, 11, 8 P.3d 391, 394 (App. 2000) (internal quotation marks omitted).
>
> ¶9 A person commits theft of means of transportation if, without lawful authority, he knowingly "[c]ontrols another person's means of transportation knowing or having reason to know that the property is stolen." A.R.S. § 13-1814(A)(5). The Camaro's owners did not give Moreno or Garcia permission to drive the car. The Camaro had a cracked steering column and could only be operated with a tool like a screwdriver. Moreno was in possession of the Camaro within approximately two hours of it being reported stolen. *See State v. Rood*, 11 Ariz. App. 102, 103, 462 P.2d 399, 400 (1969) ("Unexplained possession of recently stolen goods can generate an inference of the requisite felonious intent."). Once officers verified that the Camaro was stolen, Moreno stopped cooperating and attempted to flee. *See State v. Hunter*, 136 Ariz. 45, 48-49, 664 P.2d 195, 198-99 (1983) (jury can consider flight as consciousness of guilt).
>
> ¶10 Resisting arrest occurs when a person intentionally prevents or attempts "to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by [] . . . [u]sing or threatening to use physical force against the peace officer." A.R.S. § 13-2508(A)(l). Officers Urbatsch and Magness wore police uniforms, and Officer Urbatsch spoke to Moreno from inside a patrol vehicle. As Officer Urbatsch was chasing Moreno, he shouted, "stop police." Moreno continued to resist even after officers caught up with him and disregarded commands to "stop resisting."
>
> ¶11 There was likewise substantial evidence Moreno committed criminal damage by recklessly defacing or damaging property of the Phoenix Police Department. *See* A.R.S. § 13-1602(A)(l). Officers observed Moreno kicking the door of the patrol vehicle. He kicked it to such an extent that the door bowed, the rubber lining broke off, and the vehicle had to be taken out of service because it could no longer secure passengers.
>
> ¶12 Finally, the record supports Moreno's conviction for threatening or intimidating, an offense that requires evidence of a threat, by words or conduct, to cause physical injury to another person. *See* A.R.S. § 13-1202(A)(l). After reading their nametags aloud, Moreno told Sergeant Britt, Officer McDavid, and Officer Magness that he was a member of the Mexican

>Mafia and that he would kill them and their children. The officers testified that because the Mexican Mafia is a dangerous criminal street gang, they took the threat seriously.

(Exh. FF at 3-5.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The relevant United States Supreme Court precedent applicable to claims of insufficient evidence is set forth in Jackson v. Virginia, 443 U.S. 307 (1979): there is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Thus, "the dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318.) A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. See id. at 1275.

It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the reviewing court will assign the inference that favors conviction. See McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." United States v. Dinkane, 17 F.3d 1192, 1196 (9th Cir. 1994) (quoting United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)).

The Court, having reviewed the evidence of record in the light most favorable to the prosecution as set forth in the transcripts and as summarized in the appellate court's decision, finds that the record evidence reasonably supports the jury's finding of guilt beyond a reasonable doubt. Thus, the appellate court's rejection of Petitioner's insufficient evidence claim was neither contrary to nor an unreasonable application of clearly established federal law. The Court will recommend that Ground Four be denied and dismissed.

## CONCLUSION

Having determined that Grounds One, Two, and Three are procedurally defaulted, and Ground Four fails on the merits, the Court will recommend that Petitioner's Amended Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 9) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure

timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 10th day of November, 2016.

Michelle H. Burns
United States Magistrate Judge

- 15 -